563 So.2d 496 (1990)
Mike L. GROVES
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY.
No. 89-CA-1737.
Court of Appeal of Louisiana, Fourth Circuit.
May 31, 1990.
Rehearing Denied July 19, 1990.
*497 David S. Kelly, Randall A. Fish, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for Illinois Cent. R. Co.
Joe M. Inabnett, Walter J. Suthon, III, New Orleans, for Michael L. Groves.
Before KLEES, WARD and BECKER, JJ.
WARD, Judge.
Illinois Central Gulf Railroad Company appeals an adverse jury award in a personal injury suit.
*498 Mike L. Groves while employed as a switchman by the Illinois Central Gulf Railroad Company, now the Illinois Central Railroad, ("IC") suffered ankle and back injuries when he stepped on a box car spring hidden by weeds in a switching yard in Memphis, Tennessee. Groves sued the IC in negligence under the Federal Employers Liability Act, 45 U.S.C. § 51, et seq. (FELA) claiming his injuries resulted from the IC's failure to provide him a safe place to work.
The jury found the IC negligent, Groves not negligent, and awarded him $300,000.
The IC asks this Court to reverse, arguing it was not negligent but that Groves was. In the event this Court affirms the findings of liability, IC then argues this Court must set aside the award for future lost wages.
State Courts must apply federal substantive law to adjudicate a FELA claim. Monessen Southwest Ry. Co. v. Morgan, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988). The controlling principles are the same as those in Jones Act cases.
The FELA statute provides:
Every common carrier by railroad ... shall be liable in damages ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents or employees ... or by reason of any defect or insufficiency, due to its negligence, in its cars, ... machinery, track, roadbed, or other equipment.
45 U.S.C. § 51; See also Atchison, T & S.F. Ry. Co. v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896 (1930).
A railroad is obligated only to exercise ordinary care in providing its employees a safe place to work. Bailey v. Central Vermont Railroad Company, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943).
An injured railroad employee must only prove slight negligence to prevail against the railroad. In Boeing Company v. Shipman, 411 F.2d 365 (5 Cir.1969) the Court addressing the burden of proof noted: Slight negligence, necessary to support an FELA action, is defined as a `failure to exercise great care,' and that burden of proof, obviously, is much less than the burden required to sustain recovery in ordinary negligence actions. Prosser, Law of Torts § 34 p. 186 (3rd ed. 1964). 411 F.2d 365, 371.
In reviewing judgments where federal substantive law is applied, findings of the trier of fact on the merits may be set aside when they are "clearly erroneous." Sutton v. Central Gulf Lines, Inc., 433 So.2d 888, 891 (La.App. 5 Cir.1983). The Sutton Court relied upon McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954) for an explanation of the "clearly erroneous" rule:
A finding is clearly erroneous when `although there is evidence to support it the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'
348 U.S. at 20, 75 S.Ct. at 7.
In two of six assignments of error, the IC contends the jury erred in finding it liable and Groves free from fault. These assignments of error are meritless.
At trial Groves testified that around 3:00 p.m. on July 16, 1986, he was working as a switchman which required him to separate railroad cars onto different tracks for consignment to various destinations. He explained that the job entails dangerous conditions: objects fall off and out of cars being moved; break shoes and boxcar springs are frequently knocked from the cars, creating hazards. Because of these conditions as well as the hazards posed by moving cars, he had to "watch [himself], stay on the alert, be careful." On the date in question, Groves was shifting 15 to 20 cars when he walked into an area of cut weeds, stepped on a boxcar spring, twisted his ankle and fell backwards.
J.T. Mixon, a 20 year IC employee who was the foreman of the switching job when Groves was injured, corroborated Groves' testimony that scrap iron, debris and weeds littered the area the men were working in. Mixon testified that he saw Groves' injured ankle and personally inspected the area of *499 Groves' fall, finding "a boxcar spring hidden under some weeds that [were] cut down."
When questioned about what procedures the IC employed to keep the yard clean, Mixon explained the company had a maintenance crew whose job it was to regularly clear the rail yards; however, Mixon said there were past occasions when he expressed complaints to the maintenance supervisor about debris lying around, but got no results.
To refute this testimony, the IC offered the testimony of Willie Reese, retired Maintenance and Way Supervisor, employed by the IC and working in the summer of 1986. Mr. Reese informed the Court he was responsible for inspecting and maintaining conditions in the Memphis area on a regular basis. He said that weeds are sprayed with a herbicide twice a year and track inspectors walk the track two days a week looking for debris. Mr. Reese testified that on the morning following Groves' accident he inspected the area of the fall and there were no weeds, boxcar springs or other debris.
We have two track inspectors that cover that track two days a week, but that don't mean there is not going to be anything on the ground for the simple reason we have thirty trains a day in that yard and something falls off every time they come in.
James Combs, a thirty-three year employee of the IC on duty as a locomotive engineer in the switch house on the day Groves was injured, confirmed that Groves complained of a fall and ankle injury, and that maintenance men regularly clean the yard area of debris or other hazardous conditions.
The IC argues that it is not an insurer against any and all personal injuries suffered by its employees and that "mere proof" that the train yard may pose some dangers or is a difficult place to work was insufficient for the jury to hold the IC negligent absent proof of the IC's negligence with respect to the particular hazard Groves encountered. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949); Atchison, Topeka & Santa Fe Railroad Company v. Toops, 281 U.S. 351, 50 S.Ct. 281, 74 L.Ed. 896 (1930).
Considering the foregoing testimony, we cannot say the jury erred in concluding Groves proved the IC's negligence by a preponderance of the evidence.
Neither do we find error in the jury's conclusion that Groves was not negligent.
The IC contends that Groves' admission he was not watching where he was going when he fell shows fault and should diminish his damage recovery.
Groves, as well as all the other experienced railroad witnesses, attested to the dangers in switching cars. Willie Reese said the work "is hazardous ... you can get killed."
Although Groves did say he was not looking at the ground when he fell, he was watching the cars to be sure they cleared the switch. We do not think it unreasonable for Groves to focus some of his attention on the moving cars. We cannot say the jury's finding is not supported by the record.
The IC next argues the Trial Judge erred by deciding to allow William Melson, a "surprise" witness, to testify. IC complains it learned Melson would testify only minutes before he took the stand and it was therefore prejudiced by its inability to discover Melson's anticipated testimony.
Counsel for Groves admitted he advised IC of Melson's presence only on the day of trial but attributed his tardiness in doing so to the fact Groves' case was 11th on the docket and neither counsel believed the matter would be heard because of the number of cases ahead of it. Nevertheless, in allowing Melson to testify the Court stated:
The Court feels that counsel has not kept this witness away from the other side. Counsel just learned about himself [sic]... The Court feels that in weighing the balance of justice herein it would be best to let him testify.
The trial judge has much discretion in determining which witnesses can testify at trial; Naylor v. La. Dept. of *500 Public Highways, 423 So.2d 674 (La.App. 1 Cir.1982) writ den. 429 So.2d 127 (La.1983); however, the exercise of that discretion should not frustrate the basic purposes of pre-trial discovery, one of which "is to protect a party from prejudicial surprise at trial by the introduction of evidence not previously known by him to exist, and against which he could not therefore have prepared a rebuttal.... Riverland Food Corporation v. Carriage Meat Company, 449 So.2d 1131, 1133 (La.App. 5 Cir.1984). If the Trial Court erred, it was harmless. Melson's testimony merely corroborated Reese's testimony about the dangers and hazards inherent in switching activities, debris falling off box cars, clean up procedures and general working conditions in the switching yard.
In the next assignment, the IC charges error by the Trial Judge's failure to give one of its jury charges completely.
Among others, the IC requested that the following charges be given:
The liability of a railroad company for failure to furnish employees with a safe place to work depends on whether or not the railroad company had actual or constructive notice of the alleged dangerous condition, and said condition must be shown to have existed for a sufficient time to permit the railroad to discover and correct said condition by the use of ordinary care.
* * * * * *
and
No liability can be assessed against the defendant railroad company unless the plaintiff establishes by a preponderance of the evidence that the railroad knew actually or constructivelyof the existence of a dangerous condition and had a reasonable opportunity to correct it.
Accordingly, should you determine in your deliberations that plaintiff was injured, but the defendant Illinois Central Railroad was unaware of the existence of a dangerous condition or otherwise had no reasonable opportunity to correct it, then you should find for the defendant Illinois Central Railroad.
The Court gave the first charge but refused the second one which the Judge perceived as substantively same as the first.
The IC contends that the Court's failure to say that IC should be allowed an opportunity to correct the hazard it created, implied to the jury a duty of "absolute rather than ordinary care." We do not agree.
In addition to the first charge quoted, the Court gave the following charges:
The liability of a railroad company for failure to furnish employees with a safe place to work depends upon whether or not the railroad company had actual or constructive notice of the alleged dangerous conditions. By actual notice means that the railroad should have known of the condition or by constructive notice means that the conditions were such that the railroads should have known about the badness of the situation and the badness of the yard causing these injuries to the plaintiff.
and
The employee bears the burden of proving that there was a hazardous condition and that the employer, with the exercise of due care, could reasonably have foreseen that the particular condition could cause the injury sustained by the plaintiff. Mr. Groves.
The defendant is not bound to anticipate every possible accident because a railroad is necessarily attended by some danger and it is impossible to eliminate all danger. The defendant is bound only to exercise ordinary care under the particular circumstances.
The instructions given by the Court satisfy the guidelines in Massey v. Johnson, 488 So.2d 1233, 1235 (La.App. 4 Cir.1986) cert. den. 494 So.2d 331 (1986):
In a jury trial the judge need not give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable to the pleadings and facts of the particular case. (citations omitted).
Moreover, the Court's instructions accurately reflect the law as stated in Bailey and Boeing Company, supra.
*501 IC's next assignment, contends that there was insufficient evidence to allow a jury to consider awarding Groves damages for loss of future earning capacity.
The evidence relevant to Groves' claim for loss of future earning power is relatively straight forward. Primarily, because of his back injury Groves was advised by Dr. Stuart Phillips, who treated him from September 1986 until trial, not to return to employment as a switchman. Dr. Phillips told the Court:
I felt as though it was a permanent injury, yes. In other words, I felt the injury was such that it would not get completely well.
* * * * * *
My opinion was that he could not return to a job that requires repetitive heavy lifting, bending and stooping. My understanding is that a switchman has to lift weights in excess of fifty pounds and if that is the case then he should not be a switchman.
Dr. Phillips assigned a 10% disability rating to Groves.
Dr. James Laborde, retained by IC to examine Groves, found only "some degree of arthritis" and "age appropriate conditions of the spine." Dr. Laborde was reluctant to attribute Grove's spinal abnormalities to the accident.
Groves introduced the IC's answers to interrogatories which verified Groves' salary for the six years preceding trial as averaging $24,564.86 per year. Groves also testified concerning his past wages and offered a 1987 Future Damage Calculator which the Court received only as a proffer.
The IC argues that the foregoing evidence provides no reasonable basis upon which to conclude that Groves suffered a loss of earning capacity as a result of his accident. Moreover, the IC strenuously maintains that Groves did not substantiate his claim because he offered no expert economic testimony, actuarial evidence, work life expectancy tables or evidence of the appropriate discount rate. In addition, no evidence of Groves' future earning capacity or future employability was offered. The IC maintains that it is reasonable to assume that a significant portion of the $300,000 award was for future lost wages, and that as such, constitutes palpable reversible error in the absence of any competent supportive evidence.
At trial the IC certified Groves earnings from his employment personnel file from 1980 through the date of his accident. The IC also stipulated that Railroad Retirement benefits in the amount of $13,050.00 were paid to Groves during his disability. The IC records indicated that Groves' salary for the six years preceding his accident averaged $24,564.86 per year. In his trial testimony Groves verified the IC's records.
The IC presented no evidence of present value of lost future earnings nor did it submit or request a jury instruction on that point.
Although Groves did request and tender a detailed proposed jury instruction on present value of amounts to be received in the future, the Judge failed to direct the jury to consider present value. Neither party objected to the absence of an instruction on discounting to present value.
The IC relies upon Ballantine v. Central Railroad of New Jersey, 460 F.2d 540 (3rd Cir.1972) to support its argument that a FELA plaintiff claiming future wages has the burden to present evidence of present value.
Groves refutes the IC's reliance on Ballantine by directing attention to Pennsylvania Railroad Company v. McKinley, 288 F.2d 262 (6th Cir.1961) where the Court affirmed an award to a FELA plaintiff which included loss of earning capacity. The Court in that case charged:
... the jury will determine the money value which will fully, fairly, and justly compensate the plaintiff for all such loss of past, present and future earning capacity as you find he suffered or will suffer as a result of this collision. 288 F.2d at 265.
In the present case, the Trial Court instructed the jury:
... So in determining loss of wages you are to consider the amount of past due *502 wages that he would have earned from the date of the injury in July of 1986 to the present date. Then you are to consider what future loss of wages you feel he would be entitled to. That figure is up to you to determine.
An examination of federal cases subsequent to Ballantine and McKinley indicates the McKinley view as the favored one. See Heater v. Chesapeake & Ohio Railway Co., 497 F.2d 1243, 1240-1250 (7 Cir.1974); Duncan v. St. Louis San Francisco Railway Co., 480 F.2d 79, 87 (8 Cir. 1973) and Bonura v. Sea Land Service, Inc., 505 F.2d 665, 668-669 (5th Cir.1974).
Although some Louisiana appellate decisions reflect that actuarial and economic experts are often used in the course of proving loss of future earnings, that type of evidence has not been made a prerequisite to recovery. See Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971).
In light of the McKinley decision, Groves' verification of the IC's evidence of his wages and benefits coupled with a lack of objection from both parties regarding the Court's failure to instruct on the issue of present value, we conclude the jury had sufficient information before it to conclude Groves suffered a loss of earning capacity and to assign a monetary value to that loss.
The IC's final assignment of error attacks the jury's damage award as being excessive.
While we have no means to dissect the jury's award into its component parts, we, nevertheless, feel Groves produced evidence sufficient to justify the lump sum award.
The record established that Groves averaged $25,000 annually for the six years proceeding his accident. There were 2½ years from the date of accident to date of trial which computes to almost $65,000.
Dr. Phillips testified Groves suffered a permanent injury attributable to his fall which foreclosed Groves' ability to return to his switchman's job.
The jury heard Groves testify regarding the pain he experiences as a result of his back condition as well as his mental anguish over the loss of employment and monetary security. Moreover, Groves expressed his apprehension over the possibility of future corrective surgery. Before a jury award will be disturbed, there must be a clear abuse of discretion. Coco v. Winston, Inc., 341 So.2d 332 (La.1977). Reviewing the evidence we cannot say the jury abused its discretion in awarding damages in this case.
The judgment is affirmed. Costs of the appeal are assessed to IC.
AFFIRMED