610 So.2d 843 (1992)
Tyrone Herman DUFOUR
v.
UNION PACIFIC RAILROAD COMPANY-MISSOURI PACIFIC RAILROAD COMPANY.
No. 91 CA 1273.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Rehearing Denied January 11, 1993.
*844 Joe M. Inabnett, New Orleans, for plaintiff-appellee Tyrone Herman Dufour.
Boris F. Navratil, Baton Rouge, for defendant-appellant Union Pacific R. Co.-Missouri Pacific R. Co.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in a suit for damages in a FELA case.[1]

FACTS
On or about October 21, 1986, petitioner, Tyrone Dufour, was employed as a bridge and building helper by defendant, Union Pacific Railroad Company-Missouri Pacific Railroad Company (Railroad). On that day Dufour was working with the bridge and building crew in Eunice, Louisiana, on an assignment which involved, among other things, using a crane to lift and invert a 39-foot rail panel located near the bottom of a bridge. After the crane operator lifted *845 the rail panel, Dufour manually guided the panel as it swung near the bridge. Shortly thereafter, Dufour fell with his legs caught between the cross ties of a rail panel remaining on the ground. As a result of this fall, Dufour sustained injuries.
On June 24, 1988, Dufour filed suit for damages against the Railroad alleging, among other things, that the Railroad failed to provide safe working conditions, equipment, or practices and failed to properly train and supervise its employees. In his petition, Dufour specifically complained of the Railroad's failure to use guide ropes when lifting rail panel sections with a crane. Dufour further alleged that the Railroad violated the Federal Occupational Safety and Health Act (OSHA). In answer to Dufour's petition, the Railroad alleged, among other things, that Dufour was contributorily negligent.
After a jury trial, the jury determined that the Railroad was liable for Dufour's damages. However, the jury also determined that Dufour was contributorily negligent and attributed 60% of the fault to Dufour. On February 8, 1991, the trial court rendered judgment in accordance with the jury's verdict. Thereafter, Dufour filed a motion for a judgment notwithstanding the verdict (JNOV) and, alternatively, for a new trial, complaining of the jury's finding that he was contributorily negligent. In support of his motion, Dufour contended that the jury verdict was contrary to the law and evidence in that, under FELA, the Railroad could not avail itself of the defense of contributory negligence because the Railroad violated an OSHA regulation requiring the use of guide ropes when rotating loads with cranes.
The trial judge granted Dufour's motion for JNOV and rendered judgment in favor of Dufour for the full amount of his damages, finding that Dufour was not contributorily negligent.
The Railroad appealed, specifying the following errors:
1. The trial judge abused his discretion in rendering a judgment notwithstanding the verdict on the issue of liability, when the evidence supported the findings of the jury.
2. The trial judge erred in substituting his own independent assessment of the credibility of witnesses and the weight to be given the evidence in granting a judgment notwithstanding the verdict.

JNOV
In actions brought under the Federal Employers' Liability Act (FELA), federal law, and not state law, is applicable. Groves v. Illinois Central Gulf Railroad Company, 563 So.2d 496, 498 (La.App. 4th Cir.), writ denied, 568 So.2d 1083 (La.1990); Broussard v. Missouri Pacific Railroad Company, 376 So.2d 532, 537 (La.App. 3rd Cir.1979). Because the instant case arises under FELA, we must apply the standards of review applicable in the federal court system. Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63, 66-67 (1971);[2]Bailey v. Missouri Pacific Railroad Co., 383 So.2d 397, 401 (La.App. 3rd Cir.), writ denied, 385 So.2d 784 (La.1980). See Leyser v. Chicago, Rock Island & Pacific Railroad Company, 77 So.2d 87, 98 (La.App. 1st Cir.1954).
In the federal court system, the determination to grant a JNOV is one of law. Monette v. AM-7-7 Baking Company, Ltd., 929 F.2d 276, 280 (6th Cir.1991).[3] In reviewing rulings on motions for directed verdict and JNOV, the inquiry of the appellate courts matches the inquiry taken *846 by the trial court in passing on such motions. Keyes v. Lauga, 635 F.2d 330, 334 (5th Cir.1981). In other words, the determination to grant a JNOV is to be made in the first instance by the lower court, and the standard of review remains the same when the trial court's decision is reviewed on appeal. Monette v. AM-7-7 Baking Company Ltd., 929 F.2d at 280; Worthington Corporation v. Consolidated Aluminum Corporation, 544 F.2d 227, 231-32 (5th Cir.1976).
In Boeing Company v. Shipman, 411 F.2d 365, 370-77 (5th Cir.1969), the court distinguished the standard of review to be applied in FELA cases from that generally applicable in other federal cases. In Boeing, the court set forth the standard applied by federal appellate courts in cases which are not brought under FELA, stating:
On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.
Boeing Company v. Shipman, 411 F.2d at 374-75. See also Horton v. Buhrke, A Division of Klein Tools, Inc., 926 F.2d 456, 459 (5th Cir.1991); Fruge v. Penrod Drilling Co., 918 F.2d 1163, 1165-66 (5th Cir. 1990).[4]
In contrast, under FELA, the standard for determining whether the plaintiff's evidence is sufficient to support the jury's verdict is whether, viewing the evidence in the light most favorable to the plaintiff, "there is a complete absence of probative facts to support the conclusion reached." Perry v. Morgan Guaranty Trust Company of New York, 528 F.2d 1378, 1379 (5th Cir.1976). See also Boeing Company v. Shipman, 411 F.2d at 370 and 372, citing 5 Moore, Federal Practice 50.02[1], p. 2324 (2nd ed. 1968) and the dissenting opinion of Justice Harlan in Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 563-64, 77 S.Ct. 457, 480, 1 L.Ed.2d 511, 519 (1957). See also Comeaux v. T.L. James & Company, Inc., 702 F.2d 1023, 1024 (5th Cir.1983).
FELA represents a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and who are helpless to provide adequately for their own safety. Sinkler v. Missouri Pacific Railroad Company, 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958); Green v. River Terminal Railway Company, 585 F.Supp. 1019, 1023 (Ohio, E.D.1984), affirmed, 763 F.2d 805 (6th Cir.1985). Policy considerations have led to the adoption of a somewhat paternalistic attitude toward workers in interstate commerce, with a correlative lowering of the quantum of evidence required to support a jury verdict for a plaintiff in FELA cases as compared to common law actions for negligence. See Perry v. Morgan Guaranty Trust Company of New York, 528 F.2d at 1379. In light of the policy considerations associated with FELA, a *847 jury determination against a plaintiff on the issue of his contributory negligence arguably is not entitled to the great deference afforded to a jury's threshold determination of the employer's negligence. See Springborn v. American Commercial Barge Lines, Inc., 767 F.2d 89, 98-100 (5th Cir.1985). See also Springborn v. American Commercial Barge Lines, Inc., 767 F.2d at 100-01, (Garwood, J. dissenting). Cf. McBride v. Loffland Brothers Company, 422 F.2d 363, 364-65 (5th Cir.1970), in which the court found that the rule generally applicable in FELA cases, that the jury's verdict should be allowed to stand unless completely unsupported by probative facts, applied equally to the jury's verdict concerning the plaintiff's contributory negligence and its verdict on the employer's negligence. See also Comeaux v. T.L. James & Company, Inc., 702 F.2d at 1024. Cf. Bobb v. Modern Products, Inc., 648 F.2d 1051, 1057 n. 4 (5th Cir.1981).
FELA does not define negligence, leaving that question to be determined by the common law principles as established and applied in the federal courts. Urie v. Thompson, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949). What constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes. See Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 n. 13 (1957); Urie v. Thompson, 337 U.S. at 174, 69 S.Ct. at 1026. According to federal jurisprudence, in order for contributory negligence to exist at all, the employee in question must have violated a duty to act or refrain from acting. Bobb v. Modern Products, Inc., 648 F.2d at 1056.
In the instant case, the evidence is not conflicting. When the accident occurred, Dufour was a member of a railroad crew working on an assignment which involved using a crane to lift sections of rail panels from the ground onto a bridge. The rail panels, which were thirty-nine feet in length, consisted of parallel rails attached with cross ties. The witnesses agreed that before the accident occurred, at least two sections of rail panel were stacked on top of each other on the sloping ground near the approach of the bridge.
Scott Brown, who was working closely with Dufour at the time of the accident, testified that he and Dufour attached a section of rail panel to two hooks on cables leading to the crane. Brown said that he and Dufour were instructed to "go down, hook them, get away from them and no tie ropes." Brown said that after he and Dufour hooked the rail panel, the rail panel was lifted from where it was stacked, leaving another section of rail panel lying on the ground. When the rail panel was lifted, it swung under or against the bridge. Brown testified he would have manually guided the panel, but Dufour acted before he did. Brown stated that Dufour manually steadied the section of rail panel then turned and fell on the section of rail panel which remained on the ground. Brown said that he could not recall attempting to lift a section of rail panel without guide ropes on any other occasion. Brown testified that, in his opinion, the section of rail panel would not have swung under the bridge had guide ropes been used.
Similarly, Dufour testified that before the accident occurred he had been instructed by the foreman not to use guide ropes. Dufour said that he and Brown hooked up a section of rail panel which, when it was lifted by the crane, swung under the bridge. Dufour testified that before he attempted to manually guide the rail panel, he told the foreman, "[H]old up.... let me get this thing out of the way before you give ... any signals." Dufour said he then "went under the bridge and ... caught ... [the] panel that was under there." Dufour said that shortly thereafter he heard the crane "rev up." Dufour stated that the panel was coming towards him, and he was backing away when the accident occurred. Because he was knocked unconscious during the accident, Dufour stated that he could not clearly remember details of events immediately after he fell. Dufour said that it was his impression that the swinging panel had hit him.
*848 Several of Dufour's co-workers also testified. Shane Dauphine, who operated the crane involved in the accident, testified that the section of rail panel being lifted had been stacked on the ground upside down and that, when the accident occurred, the crew was in the process of turning the rail panel over so it could be installed on the bridge. Dauphine said that in order to flip a rail panel, the panel would have to be turned on its edge and "teeter-tottered" on to its other side. According to Dauphine, guide ropes were used when lifting panels generally, but were not utilized when flipping panels over. In describing the accident, Dauphine testified that one corner of the rail panel being lifted remained on the ground because of the slope of the ground. Dauphine did not think that the panel caught under the bridge. From his vantage point in the crane eighteen feet above the area of sloping ground where the rail was stacked, Dauphine saw Dufour fall. After Dufour fell, Dauphine went down to the slope below and saw that Dufour's feet had gone between the ties of the section of rail panel lying on the ground, and Dufour had fallen over backwards.
David Paul Courville, an assistant foreman who was present at the accident, testified that guide ropes were never used in flipping rail panels. Courville was on the bridge when Dufour and Brown attached hooks connecting the panel with the crane. According to Courville, "they lifted ... [the panel] up and got ready to turn it over, and it kind of turned under the bridge somehow; when one end got up, it went under the bridge. And I think Mr. Dufour went up to pull it out." Courville did not believe that it was necessary to have someone pull the rail panel from under the bridge and suggested that instead the rail panel could have been set down and then moved. Courville admitted that he did not actually witness the accident because he was looking in another direction when he heard someone say that Dufour had fallen.
Donnie Coker, the foreman for the Railroad at the accident site, testified that after the panel was lifted, it drifted into the bridge. Coker watched Dufour straighten the rail panel manually. Coker stated:
The last time Mr. Dufour came out on the track panel to straighten it up, one end had moved, I believe, toward the bridge. And he straightened it up, and he was moving away from the panel and walking on another panel. And I looked at the machine and told him to come down. I looked at the machine operator. I've got to keep my eye on him because some spots I get that he can't see me; I've got to know if he's looking at me. And then I saw Brown coming toward back toward the panel. And I know, you know, he didn't [sic] supposed to be there. Because once we move the panel, everybody is supposed to be in the clear. And that's when Mr. Dufour fell.
Coker testified that, when he signalled the crane operator, he thought Dufour was in the clear. Coker looked back and saw that Dufour had fallen with his legs between the cross ties of the rail panel remaining on the ground.
We have carefully reviewed the entire record and conclude that there is no evidence to support the conclusion that Dufour was contributorily negligent. The witnesses all testified that Dufour was injured after a section of rail panel was lifted from the ground without the use of guide ropes. The witnesses consistently testified that after the rail panel was lifted, Dufour, under the supervision of the Railroad and without comment from anyone present, attempted to manually guide the rail panel. Although the other witnesses did not corroborate Dufour's belief that the rail panel struck him, there is no conflict in the evidence that Dufour was injured while retreating from the section of rail panel that was at least partially lifted from the ground. Therefore, under either the standard generally applicable to review of a JNOV or under the standard articulated specifically for FELA cases, the ruling of the trial court was correct.
In the record before us, there is no probative evidence showing that Dufour acted negligently or should have acted differently. The instant case is similar to Williams v. Brasea, Inc., 549 F.2d 977, 978 (5th *849 Cir.1977) in which an employee was injured when a power winch was applied to the line he was disentangling before the employee was safely clear of the line. The court found that the trial court's finding that the employee was 40% contributorily negligent was incorrect as a matter of law as there was no evidence that the plaintiff was responsible for starting the winch. Our brethren of the Fourth Circuit in Thompson v. New Orleans Public Belt Railroad, 373 So.2d 1312, 1314-16 (La.App. 4th Cir. 1979) and Groves v. Illinois Central Gulf Railroad Company, 563 So.2d at 497-99, addressed the issue of contributory negligence in railroad cases. In Thompson, an accident occurred when railroad cross ties were being unloaded with a crane. The plaintiff, who was overseeing the unloading of the timbers, moved his position after a load of timbers was lifted and was struck by the swinging load of timbers. The defendant alleged that the plaintiff had voluntarily placed himself in a position of danger in front of a suspended swinging load with his back turned where he could ultimately be struck and injured. The court found that the railroad failed to carry its burden of proving contributory negligence, since it was not clear that the plaintiff placed himself in a position which he should have known was dangerous. Similarly, in Groves, a railroad worker was injured when he stepped on a boxcar spring hidden by some weeds. The court determined that the worker was not contributorily negligent, although the worker admitted that he was not looking where he was going because he was focusing his attention on switching moving railroad cars. The court said, "[w]e do not think it unreasonable for Groves to focus some of his attention on the moving cars." Groves v. Illinois Central Gulf Railroad Company, 563 So.2d at 499.
In the instant case, Coker, the foreman, testified that the men were supposed to be in the clear before the panel was moved; however, there was no evidence showing that it was Dufour's own fault that the signal to move the rail panel was given before he was in the clear. The facts and inferences drawn from the evidence point strongly and overwhelmingly to the conclusion that Dufour, through no fault of his own, was injured while making a retreat from a section of rail panel which was mistakenly moved before he was in a safe position. There was no evidence from which reasonable men could have arrived at a contrary verdict, therefore, the trial court properly granted a JNOV, finding that Dufour was not contributorily negligent.
Having determined the trial court was correct in granting the JNOV on the grounds that there was no evidence of Dufour's contributorily negligence, we find it unnecessary to address the other issue raised by the Railroad, namely whether a railroad can avail itself of the defense of contributory negligence when the railroad is negligent and/or in violation of an OSHA regulation.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The Railroad is cast for all costs on appeal.
AFFIRMED.
LANIER, J., concurs in the result.
NOTES
[1] The parties agree that this case is governed by the provisions of Title 45, U.S.C.A. § 51, commonly referred to as the Federal Employers' Liability Act (FELA), which addresses the liability for common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence and provides, in pertinent part, as follows:

Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
[2] Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63, 67 n. 6 (1971) and several other cases cited in this opinion are governed by the Jones Act, through which Congress made the Federal Employers' Liability Act applicable to seamen. The controlling principles in FELA cases are the same as those in Jones Act cases. Groves v. Illinois Central Gulf Railroad Company, 563 So.2d 496, 498 (La.App. 4th Cir.1990).
[3] In contrast, when applying Louisiana law in reviewing a grant of a JNOV, appellate courts determine whether the trial court's findings in rendering the JNOV were "manifestly erroneous," a standard of deference generally afforded to determinations of fact. See Petitto v. McMichael, 588 So.2d 1144, 1147 (La.App. 1st Cir. 1991), writ denied, 590 So.2d 1201 (La.1992).
[4] The Louisiana rule governing JNOV was modeled on the corresponding Federal Rules of Civil Procedure. Even when Louisiana substantive law is applicable, when reviewing judgments notwithstanding the verdict, Louisiana courts are guided by federal jurisprudence. See Scott v. Hospital Service District No. 1 of Parish of St. Charles, 496 So.2d 270, 273 (La.1986).