802 So.2d 816 (2001)
Milton THORNTON, Sr.
v.
NATIONAL RAILROAD PASSENGER CORPORATION.
No. 2000-CA-2604.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2001.
*817 Marc D. Winsberg, Cindy T. Matherne, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, and John C. Hall, Hall & Hall, L.L.C., Birmingham, AL, Counsel for Plaintiff/Appellee.
David S. Kelly, Robert S. Emmett, Nicole Duarte Martin, Lemle & Kelleher, L.L.P., New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge DENNIS R. BAGNERIS, Sr., Judge MICHAEL E. KIRBY.
PLOTKIN, Judge.
Defendant National Railroad Passenger Corp. ("Amtrak") appeals a trial court judgment in favor of plaintiff Milton Thornton, Sr., an Amtrak employee injured as a result of his work activities, in this case brought under the Federal Employers Liability Act ("FELA"). For the *818 reasons explained below, we affirm the trial court judgment.

FACTS
Mr. Thornton was employed as a carman by Amtrak on May 21, 1997, the date of the injury at issue. At the time of the injury, Mr. Thornton was working to replace bolster springs on an Amtrak Superliner Coach. While performing this task, the wood blocking used to support the Superliner gave way, pinning Mr. Thornton's hands between "pinch points" for a period of approximately five minutes. The resulting injuries included lacerations on the left and right hands, as well as fractures of the right small finger, and to both the left ring and small finger. The injuries on his left hand required amputation of his small finger and a pin fixation of his ring finger.
To replace bolster springs on the railcars, the cars must be supported in such a way as to make it possible to compress the springs and expose the bolts securing the springs in place. It was common practice at the Amtrak facility in New Orleans for a car to be supported by wood blocking to compress these springs and expose the bolts, allowing them to be removed by the carmen. In the instant case, Mr. Thornton unscrewed the nuts and bolts by hand, placing his hands between "pinch points," a position in which they could be pinned by the machinery.
Dr. Stokes, the hand specialist who treated Mr. Thornton from the time of injury through September of 1998, assigned Mr. Thornton impairment ratios of nine percent of his right hand and eleven percent of his left hand as a result of the injuries sustained by him on May 21, 1997. Dr. Stokes stated that this would translate to a sixteen percent whole body impairment.
Mr. Thornton filed suit against Amtrak under FELA. Following the trial in the matter, the jury returned a verdict finding Amtrak 90 percent at fault, Mr. Thornton one percent at fault, and "any other person" nine percent at fault. The jury awarded Mr. Thornton $731,429 in special damages for loss of earning capacity and benefits, and $1.5 million in general damages. The court signed a judgment on the verdict and denied Amtrak's Motion for Judgment Notwithstanding the Verdict, or alternatively, Motion for Remittitur/New Trial.
Amtrak appeals the trial court decision, assigning three errors: (1) that the trial court erred in admitting into evidence documents which indicate subsequent remedial measures; (2) that the evidence does not support the jury's award for lost wages and loss of future earning capacity based on total and permanent disability; and (3) that the jury's general damage award is clearly excessive and should be reduced.

ADMISSION OF AMTRAK DOCUMENTS
First, Amtrak claims that the trial court improperly admitted documents generated after Mr. Thornton's accident and injury, which it claims contain evidence of subsequent remedial measures to be taken by Amtrak as a result of the accident. First, Amtrak complains of the trial court's decision to admit Exhibit P-2, an Amtrak Investigation Committee Report dated May 21, 1997, the date of Mr. Thornton's accident. This report included a section labeled "Committee Recommendations," recommending that Amtrak "construct a piece of equipment that will be used in place of blocking to support spring plank and procure or manufacture socket to remove swing hanger nuts." Second, Amtrak complains of the trial court's decision to admit Exhibit P-9, an Amtrak "Accident *819 Prevention" Safety Alert also dated May 21, 1997. Exhibit P-9 contained a section labeled "Preventive Measures" recommending that Amtrak "design a jig to be used in place of blocking and a tool to remove the hanger bolts."
Amtrak claims that Mr. Thornton's sole purpose for introducing the two exhibits was to prove that his accident and injury were caused by Amtrak's negligence. Amtrak claims that the two Amtrak documents are inadmissible for that purpose under the provisions of La. C.E. art. 407, which states as follows:
In a civil case, when, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This Article does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, authority, knowledge, control, or feasibility of precautionary measures, or for attacking credibility.
Amtrak also cites La. C.E. art. 103(A), which provides, in pertinent part, as follows:
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.
Amtrak claims that the admission of the two documents, and testimony relating to them, was prejudicial to Amtrak because it affected a "substantial right" of Amtrak, and that the prejudice created by the admission of the documents had a substantial effect on the outcome of the case. The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling is whether the alleged error, when compared to the entire record, had a "substantial effect" on the outcome of the case. Roger v. Dufrene, 97-1946, 718 So.2d 592, 596 (La.App. 4th Cir.9/9/98). Amtrak argues that the admission of the documents had a substantial effect on the outcome of the case because the documents, and testimony relating to the documents, comprised a major portion of Mr. Thornton's trial presentation. The evidence of these documents was used in questioning of four out of five Amtrak employees called as witnesses. Amtrak contends that this evidence was directed at proving one of Mr. Thornton's two main contentions-i.e., that Amtrak failed to provide adequate tools for the job of changing bolster springs at its New Orleans facility.
As indicated by the above discussion, determination of whether the trial court properly admitted the two documents at issue-Exhibits P 2 and P 9-involves a two-step inquiry. First, this court must determine whether admission of the documents violated the provisions of La. C.E. art. 407. If this court determines that the admission of the documents did violate La. C.E. art. 407, we must then determine whether the admission affected one of Amtrak's substantial rights for purposes of La. C.E. art. 103.
Mr. Thornton contends that the two exhibits at issue were properly admitted under the provisions of La. C.E. art. 407 for two reasons. First, he claims that the information contained in the documents does not qualify as subsequent remedial measures. Alternatively, Mr. Thornton claims that the documents were offered for attacking credibility, an "other purpose" specifically sanctioned by La. C.E. art. 407.
First, Mr. Thornton claims that the information in the Amtrak documents recommending the use of an alternative to wooden blocking does not qualify as evidence of subsequent remedial measures *820 both because metal blocking was being used at the Chicago Amtrak facility prior to his accident and because New Orleans Amtrak officials were aware of this alternative, safer method for performing the task he was performing at the time he was injured. In support of this argument, Mr. Thornton points to the testimony of Constantine Falaris, a New Orleans Amtrak foreman. Mr. Thornton claims the documents do not contain evidence of measures taken after the event in question, his injury, as metal blocking was used prior to the accident and information of this type was shared throughout the Amtrak system.
In support of this argument, Mr. Thornton cites Fontenot v. Hollier & Sons, 478 So.2d 1379 (La.App. 3 Cir.1985) and Northern Assurance Company v. Louisiana Power & Light Co., 580 So.2d 351 (La.1991). In Fontenot, the appellate court found that the trial judge properly admitted a Service Information Memorandum and Operator's Manual containing revised procedures for operating defendant's machinery. The appellate court affirmed the trial judge's decision to admit the documents, finding that the exhibits actually reflected a decision to change procedures made prior to the plaintiff's accident. In Northern Assurance Co., the Louisiana Supreme Court affirmed a trial court decision to admit pictures of house fires that occurred after the fire which formed the basis of the case at hand because they showed an alternative procedure for cutting off electricity during a house fire. The court found that the pictures were not evidence of subsequent remedial measures because the alternative procedure had been used prior to the fire in question.
Amtrak seeks to distinguish the Fontenot and Northern Assurance cases, claiming that the exhibits offered in this case contain no indication that the recommended changes were adopted prior to the accident or that they were in general practice. Amtrak also claims that the mere fact that an alternative method of performing a particular job was already in use at the Chicago facility did not indicate a previous decision to change the procedure and equipment used at the New Orleans facility. Finally, Amtrak claims that the recommendation to change procedures at the local office constitutes subsequent remedial measures specifically for the New Orleans facility and that practices and equipment used at other facilities does not affect the status of these documents.
We find no abuse of discretion in the trial court's decision to admit the documents at issue in the instant case. First, we agree with Mr. Thornton's argument that the recommendations in the exhibits simply refer to alternative methods for performing the same task in use within the Amtrak system prior to Mr. Thornton's accident. As such, they do not qualify as subsequent remedial measures under the rules set forth in Fontenot and Northern Assurance Co. Moreover, we note that the recommendation relative to the use of metal blocking in place of the wooden blocking traditionally used in the New Orleans facility is a common sense recommendation that would obviously make a dangerous task less hazardous.
We also agree with Mr. Thornton's alternative claim that the documents fall within an exception to La. C.E. art. 407 because they were offered for an "other purpose" than proving negligence or culpable conduct. Under the express provisions of La. C.E. art. 407, admission of evidence of subsequent remedial measures is allowed when they are offered for any "other purpose" besides proving negligence or culpable conduct. The article contains the following examples of "other purposes" for which subsequent remedial measures are admissible: "knowledge, *821 control, or feasibility of precautionary measures, or for attacking credibility." Mr. Thornton argues that, even if the documents did contain evidence of subsequent remedial measures, they were properly admitted to attack credibility.
At trial, two Amtrak foremen testified that the wood blocking and pipewrench provided by Amtrak to its New Orleans employees were adequate to safely perform the job of changing bolster springs. Mr. Thornton argues that the documents were properly admitted to show that the foremen knew prior to his accident that the equipment provided was inadequate for performing the task safely. Additionally, Mr. Thornton argues that the documents in question were properly admitted to rebut Amtrak's claims that Mr. Thornton was contributorily negligent. Mr. Thornton claims that the documents show that the same persons who testified that the accident was caused by Mr. Thornton's improper use of the equipment provided knew that the equipment provided was itself inadequate for the task. For this reason also, we find no abuse of the trial judge's discretion in his decision to admit the documents challenged by Amtrak.
Because we have found that the admission of the Amtrak documents did not violate La. C.E. art. 407, it is unnecessary for us to address whether the admission of the documents affected a "substantial right" of Amtrak pursuant to La. C.E. art. 103. Accordingly, we pretermit further discussion of that argument, as well as further discussion of Mr. Thornton's claim that the admission of the documents was cumulative.

DAMAGE AWARDS
Amtrak challenges both the jury's special damage award for lost wages and loss of earning capacity and the general damage award, claiming that both awards are clearly excessive in light of the record evidence in this case. The standard for reviewing jury awards in FELA cases has been explained by this court in E'Teif v. National Railroad Passenger Corp., 98-2503, (La.App. 4 Cir. 4/22/99), 733 So.2d 155, as follows:
In FELA actions brought in state court, federal substantive law applies. However, state rules of procedure apply in state court. St. Louis Southwestern Ry. v. Dickerson, 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). Accordingly, state courts are governed by federal law in determining whether the evidence is sufficient to support a jury's verdict. Dufour v. Union Pacific R.R., 610 So.2d 843-846 (La.App. 1 Cir.1992), aff'd, 614 So.2d 1263 (La.1993) citing Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63, 66-67 (1971). Ellender v. Texaco, Inc., 425 So.2d 291, 294 (La. App. 3 Cir.1982). The United States Supreme Court has stated that the standard for reviewing whether a FELA plaintiff's evidence is sufficient to support the jury's verdict is whether, viewing the evidence in the light most favorable to the plaintiff, there is a "complete absence of probative facts to support the conclusion reached by the jury." Dennis v. Denver & Rio Grande Western R.R. Co., 375 U.S. 208, 210, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963). Brady v. Southern R.R., 320 U.S. 476, 479, 64 S.Ct. 232, 88 L.Ed. 239 (1943). Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957).
The appellate courts of this state have afforded great weight to jury verdicts in FELA cases. The First and Second Circuits have required a "complete absence of probative facts" before disturbing a jury's award. Dufour, 610 So.2d at 846. Broussard v. Union Pacific R.R., 29,769, 29,770, and 29,768 (La.App. *822 2 Cir. 8/28/97), 700 So.2d 542, 548. Our own Court has required that there be clear abuse of the jury's "much discretion." Jackson v. CSX Transp., Inc., 97-0109 (La.App. 4 Cir. 12/23/97) 712 So.2d 514, 522, writs denied, 98-0417 and 98-0418 (La.4/3/98), 717 So.2d 1130, Certiorari denied, 525 U.S. 870, 119 S.Ct. 166, 142 L.Ed.2d 136 (1998). On the subject of jury verdicts in these types of cases, the Louisiana Supreme Court has held:
They must stand unless there is no evidence to sustain them, rendering them, as some courts have put it, so excessive as to be obviously punitive, motivated by prejudice, passion, partiality, or corruption. This is particularly true where the trial judge, finding the jury award is not excessive, has denied a new trial and/or remittitur.

Trahan, 255 So.2d at 70.
98-2503 at 3-4, 733 So.2d at 157 (footnote omitted).

Loss of earning capacity
Amtrak argues that the $731,429 award to Mr. Thornton for lost wages and loss of future earning capacity was improperly based on the assumption that Mr. Thornton is totally and permanently disabled from all future employment. Pointing out that a FELA plaintiff has a duty to mitigate his damages, Amtrak argues that an award for lost wages and loss of earning capacity based on total disability must be supported by record evidence. Amtrak points to testimony by both medical experts who testified that Mr. Thornton was capable of working in certain types of jobs, particularly those that involve sedentary or light-duty work. Additionally, Amtrak cites the testimony of its vocational rehabilitation experts and their conclusion after evaluation of Mr. Thornton that he would be able to obtain some sort of remunerative employment. Moreover, Amtrak asserts, Mr. Thornton testified that he is unable to work a full-time, physical job, not that he is unable to work at all. Amtrak contends that there are no probative facts in the record that would allow a reasonable jury to conclude that Mr. Thornton is unable to secure employment for any position for the rest of his life. Amtrak therefore asks this court to reduce the jury's award to conform to the evidence in the record.
As noted above, unless this court finds a "complete absence of probative facts to support the conclusion reached by the jury," the jury verdict on this issue cannot be disturbed. Because of the great discretion afforded jury verdicts in FELA cases, Mr. Thornton argues that the award for loss of earning capacity was not excessive because the jury was free to accept or reject the testimony concerning his ability to earn any wages in the future. In support of his argument, Mr. Thornton relies on Sinclair v. Long Island Railroad, 985 F.2d 74 (2nd Cir.1993), and E'Teif v. National Railroad Passenger Corp., 98-2503, 733 So.2d 155 (La.App. 4th Cir.4/22/99), for the proposition that it was within the authority of the jury to examine the facts and testimony and determine that he was permanently unable to secure remunerative employment.
Following our review of the record evidence in this case, we cannot say that the record contains a "complete absence of probative facts to support the conclusion reached by the jury" regarding Mr. Thornton's lost wages and loss of future earning capacity. Mr. Thornton testified concerning both his injuries and the effect of his injuries on his ability to perform physically-demanding jobs, which were the only types of jobs he had ever held. Moreover, Mr. Thornton testified concerning *823 his job search. Mr. Thornton's vocational rehabilitation counselor testified that Mr. Thornton was unemployable as a result of his injuries, especially when combined with his age and his functional illiteracy. Moreover, one of the same vocational rehabilitation experts who said that jobs are available that Mr. Thornton can perform admitted that there are no guarantees that Mr. Thornton could find gainful employment given his past employment history and current limitations. In fact, she admitted that some of the available kitchen and bussing jobs she listed were not suitable given Mr. Thornton's hyperalgesia, which causes pain when his hands are in water.
Following our consideration of the record evidence in light of the principles for reviewing a jury award in a FELA case, we find no abuse of the jury's great discretion in awarding Mr. Thornton $731,429 in lost wages and loss of future earning capacity. Accordingly, the special damage award for lost wages and loss of future earning capacity is affirmed.

General damages
Finally, Amtrak argues that the $1.5 million general damage award is clearly excessive and bears no rational connection to the evidence, and therefore should be set aside as an abuse of the jury's broad discretion. The correct standard to be applied in FELA cases to determine whether a general damage award is supported by the evidence is the same as that applied in other Louisiana cases. See Lilley v. Board of Supervisors of Louisiana State University, 98-1277 (La.App. 3 Cir. 3/24/99), 735 So.2d 696, which quoted the following standard from Louisiana Supreme Court's decision in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993):
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La. 1974).
98-1277 at 17-18; 735 So.2d at 705, quoting Youn, 623 So.2d at 1260-61.
Despite the two-step query established by the Youn case, Amtrak contends that it is routine for courts determining the validity of FELA awards to compare the award in question with other awards to determine whether they are excessive. In support of its argument that the jury verdict is excessive in this case, Amtrak cites Head v. Pendleton Hosp., 95-0461 (La.App. 4 Cir. 1/31/96); 669 So.2d 504, in which this court affirmed a $400,000 general damage award to a woman who sustained burns on her hand requiring amputation of two fingers. Amtrak contends that based on the evidence of this case in light of the cases cited in its briefs, the maximum reasonable general damage award is $500,000.
In addition to the rule set forth in Youn and quoted in Lilley, this court must keep in mind the Louisiana Supreme Court's statement that jury verdicts in FELA cases "must stand unless there is no evidence to sustain them, rendering them, as some courts have put it, so excessive as to be obviously punitive, motivated *824 by prejudice, passion, partiality, or corruption." Trahan, 260 La. 29, 255 So.2d at 66 67, quoted in E'Teif, 98-2503 at 3, 733 So.2d at 157. According to the Supreme Court, this rule "is particularly true where the trial judge, finding the jury award is not excessive, has denied a new trial and/or remittitur." Id.
Following our review of the record evidence in this case, we find that the jury's $1.5 million general damage award is not a clear abuse of the "much discretion" of the trier of fact because it is not excessive "for the particular injuries and their effects under the particular circumstances on the particular injured." Youn, 623 So.2d at 1260. In Youn, the Supreme Court acknowledged that in reviewing a damage award, the appellate court should consider more than just the injuries sustained. In the instant case, Mr. Thornton was pinned down for at least five minutes, suffering mental and physical agony. He is impaired with permanent disabilities as a result of his disfigured hands. "When these and other factors are properly considered under the standards discussed above, we cannot say that the trial judge abused his discretion in fixing the generous awards of general damages." Youn v. Maritime Overseas Corp., 623 So.2d at 1261. "The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages." Id. Accordingly, the trial court's general damage award is affirmed.

CONCLUSION
For the reasons stated above, the trial court judgment is affirmed.
AFFIRMED.