700 So.2d 542 (1997)
Ronney L. BROUSSARD, Plaintiff-Appellee,
v.
UNION PACIFIC RAILROAD COMPANY, Defendant-Appellant.
John L. BROUSSARD, Plaintiff-Appellee,
v.
UNION PACIFIC RAILROAD COMPANY, Defendant-Appellant.
Robert BROUSSARD, Plaintiff-Appellee,
v.
UNION PACIFIC RAILROAD COMPANY, Defendant-Appellant.
Nos. 29768-CA to 29770-CA.
Court of Appeal of Louisiana, Second District.
August 28, 1997.
Writ Denied December 12, 1997.
*543 Allisa J. Allison, William H. Howard, III, Phelps Dunbar, New Orleans, for Defendant-Appellant.
Burns & McKeithen by Don C. Burns, Donald D. McKeithen, Columbia, for Plaintiffs-Appellees.
*544 Before HIGHTOWER, BROWN and STEWART, JJ.
BROWN, Judge.
Three brothers, Ronney, John and Robert Broussard, sought damages from their employer, Missouri Pacific Railroad Company d/b/a Union Pacific Railroad Company, under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 et seq. Each claimed to have sustained a hearing loss due to working conditions. Their cases were consolidated and after a bench trial, judgment was entered for each plaintiff in the amount of $50,000. Defendant has appealed. We affirm.

APPLICABLE LAW
FELA represents a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and who are helpless to provide for their own safety. FELA was designed to provide a federal statutory negligence action and is a railroad employee's exclusive remedy for workplace injuries. Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958); Janelle v. Seaboard Coast Line Railroad Co., 524 F.2d 1259 (5th Cir.1975). Determining FELA liability is a distinctly federal question. Sinkler, supra. Although state courts have concurrent jurisdiction, pursuant to 45 U.S.C. § 56, federal law, and not state law, must be applied. Monessen Southwestern Railway Co. v. Morgan, 486 U.S. 330, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988); Dufour v. Union Pacific Railroad Co.-Missouri Pacific Railroad Co., 610 So.2d 843 (La.App. 1st Cir. 1992), affirmed, 614 So.2d 1263 (La.1993).

Prescription
As a preliminary matter, we will address defendant's argument that John Broussard's FELA claim has prescribed.
45 U.S.C. § 56 provides that a FELA action must be commenced within three years from the date the cause of action accrues. A hearing loss not specifically related to an incident or trauma has no identifiable moment of occurrence. Thus, no cause of action can accrue with respect to a hearing loss that develops over a substantial period of time until the injury has fully evolved and an employee knows or should have known of the condition and its cause. The time limitation for filing a cause of action for an occupational disease does not start until the harmful consequences of the employer's negligence manifest themselves to the employee to the extent that a diagnosis is possible of the injury and its casual connection to the work environment. Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949).
John Broussard filed this action in February 1995. Defendant contends that Broussard was aware of his hearing loss more than three years prior to his filing this cause of action and specifically during the years between 1982 and 1988.
Broussard testified that he first became aware of his disability in 1993 when he went to see Dr. Pate who diagnosed a noise induced hearing loss in both ears. Prior to Broussard's decision to visit Dr. Pate, the railroad provided a van to conduct hearing tests on all employees. Broussard testified that defendant tested his hearing in 1988 and 1990; however, he missed the van in 1992. After speaking with another employee, Broussard decided to have Dr. Pate test his hearing. His visit with Dr. Pate was in December 1993 and after he was told of his hearing loss, Broussard testified that, "I felt like the railroad had slipped one on me, they were not trying to find out that I had a hearing loss. I was going to the wrong people for help."
Broussard filed into evidence a letter he received from defendant in 1988 that stated, "[A]s part of our ongoing Hearing Conservation Program ... Union Pacific has hired Health Evaluation Program, Inc., a nationally recognized testing firm, to conduct annual hearing tests of all employees ... (which) have been evaluated by a leading authority, Dr. Joseph Bataloff of Philadelphia. Pa." The 1988 letter further informed Broussard that his hearing in both ears had tested satisfactory. Again in 1990, defendant tested Broussard and by letter notified him that his hearing remained satisfactory. This 1990 letter was also filed into evidence.
*545 No evidence was offered by defendant to contradict Broussard's testimony. Defendant relied on cross-examination and offered an Occupation Illness Report filled out in January 1994 by David Rosedale, a casualty management representative. Rosedale did not testify. Rosedale wrote that Broussard first noticed a hearing problem "about 6 to 8 years ago" and first understood that loud noise could cause a hearing problem in 1968. Rosedale further reported that Broussard stated that in 1982 or 1983, some sounds were muffled. Furthermore, Broussard told his audiologist, Terry Roberts, of ringing in his ears in 1986 or 1987.
John Broussard explained that while in the Air Force in 1968, he wore earplugs on the flight line because of the noise. Further, Broussard testified that "looking back" after Dr. Pate told him of his noise induced hearing loss, he realized for the first time certain signs of the development of his disability. It was after his visit with Dr. Pate that Broussard decided to file a claim and speak with Rosedale. Thus, Broussard's answers to Rosedale did not represent a prior understanding of a disability but rather a reflection back to indications of the evolvement of the hearing loss.
For defendant to now argue that Broussard was sufficiently aware in 1986 or 1988 of the consequences of the accumulated effects of the work environment on his hearing, after testing and telling Broussard in 1988 and 1990 that his hearing was satisfactory, is disingenuous. The trial court weighed the evidence and found that John Broussard did not have knowledge of his hearing loss and its connection with his work environment until Dr. Pate's diagnosis in 1993. The trial court evaluated Broussard's testimony and considered defendant's hypothesis. The trial court's factual determination is accorded great weight and we find no error in its conclusion.

FACTS

Robert Broussard
Robert Broussard has been employed with Missouri Pacific for approximately 27 years. He began working as an engineer in 1972; prior to this, he had worked as a fireman. Both firemen and engineers work in the cab of the locomotive. According to Robert, he was exposed to loud noises from the engines, horns, bells and radios, as well as from switching operations such as the clanging of knuckles and the popping of air hoses.
Robert stated that he began wearing hearing protection in 1992 or 1993. His testimony corroborated that of the other witnesses regarding the noise levels and unavailability of hearing protection. According to Robert, he first became aware of his hearing loss in 1993 when he was notified by defendant of his results on a hearing test. Thereafter, the audiologist, Terry Roberts, confirmed that Robert had a mild to slight hearing loss in the right ear and a moderate to mild loss in the left ear. The cause was consistent with a loud workplace.

Ronney Broussard
Ronney Broussard worked as a brakeman/conductor for Missouri Pacific from 1969-1977, 1986-1987 and 1991-1993. Like his brother Robert, who was a fireman/engineer, Ronney's job involved the operation of moving locomotives and rail cars. Ronney stated that as a brakeman/conductor, he was exposed to loud noises emanating from the radio, switching activities such as the coupling and uncoupling of cars and noises from the engines, horns, emergency brakes and bells. He testified that he complained frequently about the deafening noise levels to his union representative, A.P. Owens. The union representative testified that Ronney's complaints, along with others about excessive noise, were passed on to the railroad.
In 1986, the railroad began testing employee hearing; according to Ronney and several other witnesses, this testing was voluntary and sporadic. Ronney also stated that hearing protection did not become available until 1990 and even then, it was not readily offered. Prior to 1990, he occasionally used his own hearing protection.
Ronney's hearing was tested by defendant in April 1992. Thereafter, he was examined by Dr. Joel Norris and Dr. Rennick Webb; both confirmed the existence of a hearing loss.
*546 Dr. Norris testified that Ronney Broussard has a hearing loss in his left ear. Dr. Webb found a flat sensorineural loss in Ronney's right and left ears, but noted that at higher frequencies, the hearing loss in the left ear was worse. According to Dr. Webb, Ronney's hearing deficiency was 17% in the right ear and 34% in the left ear. Dr. Webb further found the cause of the hearing loss to be consistent with a noisy workplace.

John Broussard
John Broussard has worked as a carman with Missouri Pacific since 1971. Unlike his brothers, his work involved the maintenance of rolling stock and was performed primarily in the shop and yard. John testified that he was subjected to noises from air jacks, compressed air hoses, hammers, welding torches and air blowers. John testified that he and co-workers complained about the noisy air jacks at safety meetings. According to John, he began wearing hearing protection in 1990 when it was first made available. John noted that the railroad did not require such protection until 1992. According to the union representative, however, hearing protection was not mandatory until 1994 and in the early years, such protection was even discouraged.
According to John, he first became aware that his hearing was impaired when he went to see Dr. Pate, who determined that he had a noise induced high frequency hearing loss in both ears. This finding was confirmed by audiologist Terry Roberts. Dr. Pate believed that John's work environment probably caused or contributed to his hearing loss.
Trial Court's Findings
The vast majority of evidence ... was presented by the plaintiffs in their case-in-chief, with the defendant relying primarily on cross-examination of plaintiffs' witnesses to establish its defense....
Each of the three plaintiffs asserts a claim for hearing loss as a result of his employment with the defendant, Union Pacific Railroad. The testimony of all witnesses, plaintiffs, Roy Brown, A.P. Owens, James Howard, Thomas Kholer, and John Ladd, was essentially uncontradicted by any evidence presented by defendant, and the significance of said testimony was basically undiminished on cross-examination.... Their testimony was credible, persuasive, and with respect to the key issues herein, entirely consistent....
The Court finds that the uncontradicted evidence establishes that the daily, constant exposure by plaintiffs to intense, debilitating noise was a cause in fact of their hearing loss. Specifically, the Court finds that the improper maintenance of the train engines herein, evidenced by the necessity of plaintiffs utilizing duct tape to attempt to secure the doors and windows, was negligent, and perhaps even grossly negligent, on the part of defendant. The Court finds that defendant was aware of the danger to its employees from excessive noise, yet, despite requirements that engineers utilize the high-pitched, "blaring" horn, defendant allowed engines to operate with windows and doors which could not be secured in a manner to effectively diminish the deleterious effect of the excessive noise.
Further, the testimony of plaintiffs, particularly that of Robert Broussard, establishes that the radio in the engine compartment, a necessary tool in the safe operation of the engine, was required to be so loud to compensate for the excessive noise, that it was, in fact, a detriment rather than an asset. With improperly secured doors and windows, the noise level in the engine compartment was raised to such a level that Mr. Broussard felt he would be unable to hear the radio unless it was tuned to its highest level. In light of the fact that the radio is the principal method by which the engineer may be contacted and/or warned of impending danger or difficulties, the Court is in agreement with plaintiffs that the excessive radio volume was a necessity for safety....
[T]he evidence established that defendant knew of the potential for hearing loss from excessive work-related noise. Defendant introduced a videotape discussing hearing loss, which was supposedly a warning to the employees. However, while this tape established that defendant recognized the danger, virtually every other bit of evidence established that defendant ignored *547 such danger, apparently choosing to rely on employees' ingenuity and ability to "jury-rig" the windows and doors of the engines to reduce the danger. The Court finds the defendant's lack of effort at protection to be tantamount to an intentional disregard for the safety of its employees. In fact, the Court finds that there was no evidence presented to show that any Plaintiff was ever warned of any of the dangers pointed out in the videotape submitted by Defendant....

Discussion

Negligence
Unlike Louisiana workers' compensation law, which grants an employer tort immunity in exchange for fixed statutory benefits payable regardless of fault, FELA allows recovery only if the worker can prove that his employer was negligent. FELA retains the tort characteristics of fault-based liability and recovery of actual damages suffered rather than a fixed or arbitrary scale of benefits. 45 U.S.C. § 51. Comparative fault is applicable except that no employee shall be found contributorily negligent in cases where the employer was guilty of negligence per se in violating a federal safety statute or regulation. 45 U.S.C. § 53; Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958).
A railroad has a duty to provide a safe workplace. Following the passage of FELA, the emergence and wide acceptance of workers' compensation statutes raised questions that FELA imposed an unfair burden upon the railroad workers by predicating recovery on the employer's negligence; however, in practice, liberal construction has diminished the impact of the negligence requirement. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); Urie, supra; Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).
In a series of decisions, the U.S. Supreme Court broadened and liberalized the definition of fault and causation under FELA. Most recently in Consolidated Rail Corp., supra, Justice Thomas wrote for the court:
We have liberally construed FELA to further Congress' remedial goal. For example, we held in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), that a relaxed standard of causation applies under FELA. We stated that "[u]nder this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id., at 506, 77 S.Ct., at 448. In Kernan, supra, we extended the reach of the principle of negligence per se to cover injuries suffered by employees as a result of their employers' statutory violations, even if the injuries sustained were not of a type that the relevant statute sought to prevent. See 355 U.S., at 432-436, 78 S.Ct., at 398-400. And in Urie, supra, we held that occupational diseases such a silicosis constitute compensable physical injuries under FELA, thereby rejecting the argument that the statute covered only injuries and deaths caused by accidents. See 337 U.S. at 181, 69 S.Ct. at 1030.
That FELA is to be liberally construed, however, does not mean that it is a workers' compensation statute. We have insisted that FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." Ellis v. Union Pacific R. Co., 329 U.S. 649, 653, 67 S.Ct. 598, 600, 91 L.Ed. 572 (1947). Accord, Inman v. Baltimore & Ohio R. Co., 361 U.S. 138, 140, 80 S.Ct. 242, 243-244, 4 L.Ed.2d 198 (1959); Wilkerson, supra, 336 U.S. at 61, 69 S.Ct. at 417.
Defendant argues that federal statutes and regulations set the allowable decibel levels within the workplace, at least as to Ronney and Robert Broussard. Thus, they argue that if they operated within the allowable range, they cannot be negligent. The Secretary of Transportation, acting through the Federal Railroad Administration ("FRA"), has set maximum noise exposure levels for train operations. 49 C.F.R. § 229.121 *548 (1990).[1] There is no doubt that the FRA has regulated the working conditions of train and engine personnel, thereby preempting any duplicative or conflicting regulation by OSHA or any state. Southern Pacific Transportation Co. v. Usery, 539 F.2d 386 (5th Cir.1976), cert. denied, 434 U.S. 874, 98 S.Ct. 222, 54 L.Ed.2d 154 (1977).
Defendant now argues that plaintiffs' burden was to prove negligence and because they produced no witnesses or test results establishing what the decibel levels were in their workplace, they failed to prove a breach of any duty by the railroad. Defendants' argument that they live or die by those noise level regulations is misguided.
A FELA plaintiff can present his hearing loss case without reference to a specific regulation or without proving the precise decibel level of noise in the workplace. As we have seen in Kernan, supra, however, the violation of a regulation may be negligence per se. At least, a violation of a regulation, if proven, precludes the railroad from asserting plaintiffs' contributory or comparative negligence. 45 U.S.C. § 56.
What constitutes negligence is a federal question not varying in accordance with state or local concepts. What is negligence is a fact-bound, case by case analysis, keeping in mind Congress's remedial and humanitarian purpose and the established course of liberal construction followed by the U.S. Supreme Court. Urie, supra; Gottshall, supra. Further, negligence within the meaning of FELA attaches if the common carrier knew, or by the exercise of due care should have known, that prevalent standards of conduct were inadequate to protect petitioners and similarly situated employees. Urie, supra; Jackson v. Kansas City Southern Railway, 619 So.2d 851 (La.App. 3d Cir. 1993), writ denied, 626 So.2d 1187 (La.1993).
In this case, the trial court considered all the testimony, including that about increased noise levels resulting from defective equipment. Unsecured windows and doors, blaring horns and radios were found to add to the inescapable noise of the workplace. Complaints by employees of excessive noise went unheeded. Simple and inexpensive measures to reduce the deleterious working condition were not employed.
Defendant contends that the only evidence was plaintiffs' own testimony regarding "noisy" working conditions. In addition to the testimony of Robert, Ronney and John Broussard and several co-workers, the trial court relied upon the testimony of union representative A.P. Owens regarding workers' complaints about excessive noise in the workplace. Owens confirmed the other witnesses' testimony that the conditions were sometimes so noisy that the workers had to shout just to be heard. Owens also noted many of the alternative measures that the railroad could have implemented to reduce the noise levels, such as the installation of air conditioning units, which would obviate the need for open windows and outfitting existing cars with insulation.
We also recognize that a worker does not contemplate a lawsuit until after the event, in this case the effect of being exposed to excessive noise over a lengthy period of time. Testing to insure compliance with federal safety standards is more appropriately assignable to the railroad. After obtaining knowledge of the hearing loss, testing by either party could have produced helpful but not necessarily controlling information. Even compliance with FRA regulations does not necessarily rule out negligence under the FELA.
An appellate court may not reverse findings of fact in a FELA case unless there is a complete absence of any probative facts to support the fact finder's conclusions. Dennis v. Denver & Rio Grande Western Railroad Co., 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963); Polotzola v. Missouri Pacific Railroad Co., 610 So.2d 903 (La.App. 1st Cir.1992). Under this standard of review, we cannot find the trial court's conclusion of negligence to be unsupported and erroneous.

*549 Causation

Causation is a jury issue whenever there is evidence that an employer's negligence caused the harm, or, more precisely, enough to justify a jury's determination that employer negligence had played any role in producing the harm. Gallick, supra; Rogers, supra; Armstrong v. Kansas City Southern Railway Co., 752 F.2d 1110 (5th Cir.1985).
Defendant again argues that because plaintiffs offered no scientific proof of the decibel exposure and its duration, the source of the hearing losses cannot be determined. Thus, defendant argues that the opinions of plaintiffs' experts are meaningless.
Defendants' assertion that hunting and shooting guns caused plaintiffs' hearing losses was presented and rejected by the trial court. The expert testimony indicates that more probably than not the accumulated effect of workplace noise caused the hearing losses. As noted, appellate review standards in FELA cases are strict. Dennis, supra. In this fact specific case, the trial court's factual holdings were supported with evidence. Thus, we find no error concerning causation.

Damages
By pleading that their damages did not exceed $50,000, plaintiffs had their claims tried by the court rather than a jury. Defendant asserts that the damages awarded to each plaintiff ($50,000, the maximum awardable by virtue of plaintiffs' pleadings) are excessive.
Under FELA, a successful plaintiff is entitled to recover for all past, present and probable future harm attributable to defendant's tortious conduct, including pain, suffering and mental anguish. 45 U.S.C. § 51; Marchica v. Long Island R.R., 31 F.3d 1197 (2d Cir.1994), cert. denied, 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995).
The following is excerpted from the trial court's written reasons:
With respect to the issue of damages, the Court finds that plaintiffs have suffered a rather debilitating loss, something which affects nearly every aspect of their lives. Their personal and family lives appear affected in numerous ways, with family members testifying to the difficulties and embarrassment experienced by plaintiffs. Rather than temporary, the likelihood of ongoing aggravation, embarrassment and even humiliation seems apt to be permanent. Their relationships with loved ones are seriously affected, and the changes in their personalities, particularly with respect to irritability related to communication problems, seems unlikely to improve.
The trial court's observations and findings are consistent with and supported by the evidence. The damages awarded are within the trial court's wide discretion.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is AFFIRMED. Costs are assessed to defendant-appellant.
HIGHTOWER, J., dissents with written reasons.
HIGHTOWER, Judge, dissenting.
Based upon the record before us in this FELA action, I disagree with the majority's affirmance of the trial court's findings of negligence and causation.
While what constitutes negligence under this statute is a federal question, Urie v. Thompson, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949), the Act nevertheless makes clear that liability attaches only upon a showing of negligence, and not merely from the fact that injuries occur. Ellis v. Union Pac. R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572 (1947). In my view, the result reached below and now affirmed by the majority rests, at best, upon the latter basis alone.
Under this enactment, liability ensues from an employer's breach of the duty of care, analogous to the general common-law duty, or a breach of some statutory duty. Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). More directly, the Act imposes upon a railroad carrier the duty to conduct itself like a *550 reasonable and prudent person under the existing circumstances, Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949), to take reasonable precautions against known and foreseeable dangers, Harrison v. Missouri Pac. R. Co., 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963), and to exercise ordinary care in proportion to the known danger and the consequences reasonably anticipated from neglect, Urie, supra.
Plaintiffs in this case do not contend that their employer's fault stems from the breach of some statutory or regulatory duty but, instead, assert claims of negligence. Their proof, however, consists essentially of self-serving lay testimony. Relying upon such evidence, the trial court classified the noise as "excessive" and defendant's actions as "grossly negligent." Those determinations, I find unsupported by the record and, thus, clearly wrong. While admittedly depicting the railroad industry as an inherently noisy business, the indicated testimony falls woefully short of establishing either the requisite standard of care or a breach thereof.
Noise levels which may produce hearing loss certainly are not a matter of common knowledge, Turner v. Norfolk & Western Railway Co., 785 S.W.2d 569 (Mo.Ct.App. 1990), thus requiring plaintiffs to shoulder their burden of proof through expert analysis rather than lay opinion. The present record not only fails to include expert testimony in that regard, but also is devoid of any showing of the time-weighted average noise levels existing in plaintiffs' work, or the comparative levels at which any danger of hearing loss results. Cf. Id. Simply establishing that the workplace is noisy fails to meet the legal requirements for proving negligence. Yet, from a loss of hearing alone, both the trial court and the majority proceed to attach liability.
The same can be said of the causation finding. Even, for sake of argument, assuming a breach of duty, plaintiffs have failed to show that their hearing losses resulted from that negligence. Like noise levels, the medical diagnosis and origin of hearing loss are not matters of common knowledge readily proven by lay testimony. Although intended to connect the hearing loss to the workplace, such testimony by plaintiffs and other workers is insufficient in my mind to establish legal causation, either "in whole or in part" pursuant to 45 U.S.C. § 51.
Nor does the expert testimony link the "noise induced" hearing loss with any employment cause. Dr. Renick Webb, qualified in the field of otolaryngology, evaluated Ronney[1] on September 28, 1994, and assessed an overall 19% impairment rating, but admitted that his evaluation excluded noise-source determination. Furthermore, when first informed of the patient's hunting history, he indicated that the test "looks like a little bit of a hunter[`]s audiogram" due to its "dropping down in the higher frequencies," and that the occupational history would have suggested a more "symmetric drop" in the hearing. Neither did Dr. Joel Norris, also an otolaryngology expert who saw Ronney on April 10, 1992, offer an opinion on the cause of his hearing loss.
Dr. James Pate, otolaryngologist, saw John on December 6, 1993, and found high frequency hearing loss in both ears which he classified as "noise induced." He cited John's twenty months on the Air Force flight line as a possible source of hearing deprivation. Although generally speculating that the railroad noise probably caused some of the damage, the doctor received a limited work history and further indicated the necessity for decibel levels, length of exposure, and noise proximity in order to determine the source of the hearing loss. Although John provided a history of working with engines, air jacks, and electric motors, Dr. Pate had no idea whether this exposure caused the hearing problems in question. Thus, by his own testimony, this expert failed to establish a sufficient factual basis for any conclusions about the cause of the hearing loss. Cf. Hall v. CSX Transportation, Inc., 631 So.2d 1013 (Ala.1994). Finally, Terry Roberts, an audiologist, examined Robert on November 14, 1994, and found mild to slight high frequency *551 hearing loss in the right ear and moderate to mild loss in the left ear, but did not form an opinion as to the cause of the degeneration.
Even under the strict standard of review in FELA cases, requiring the complete absence of any probative facts to support the fact-finder's conclusion, see Dennis v. Denver & Rio Grande Western R. Co., 375 U.S. 208, 84 S.Ct. 291, 11 L.Ed.2d 256 (1963), the trial court's findings sub judice constitute manifest error. To hold otherwise under this evidence exceeds even the remedial and humanitarian purpose underlying the Federal Employers' Liability Act, and makes the railroad company the insurer of these employees simply because they claim to have been injured. While FELA's liberal construction allows broader recovery than traditional common law negligence, the present holding steps beyond those bounds by effectively discarding the fundamental precepts of legal proof. To this, I cannot subscribe.
I finally question, also, the uniformity of the damage awards in light of the differing ages, job descriptions, and years of service.
I must respectfully dissent.
NOTES
[1] The Locomotive Cab Noise Standard applies to locomotive personnel. The regulations permit continuous noise exposure in the locomotive cab of 90 db(A) over an eight hour time-weighted average. Exposure to continuous noise cannot exceed 115 db(A).
[1] Interestingly, Ronney L. Broussard's sketchy work history and biographical data suggests the possibility that he is the same "Ronney L. Broussard" appearing as plaintiff in an earlier reported FELA suit, Broussard v. Missouri Pac. R. Co., 376 So.2d 532 (La.App. 3d Cir.1979).